[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-13505

_____

D. C. Docket No. 97-00141-CV-4-RH

MCI TELECOMMUNICATIONS CORPORATION,
MCIMETRO ACCESS TRANSMISSION SERVICES INC.,

Plaintiffs-Counter-Defendant-Appellees,

versus

BELLSOUTH TELECOMMUNICATIONS INC.,

Defendant-Counter-Claimant-Cross-Claimant-Appellant,

FLORIDA PUBLIC SERVICE COMMISSION,
SUSAN F. CLARK, J. TERRY DEASON,

Defendants-Cross-Defendants-Appellants,

JULIA L. JOHNSON, DIANE K. KIESLING, et al.,

Defendants-Cross-Defendants,

UNITED STATES OF AMERICA,

Intervenor-Movant-Appellee.

———————————————

Appeals from the United States District Court
for the Northern District of Florida

———————————————
**(July 26, 2002)**


Before EDMONDSON, Chief Judge, HILL and LAY[*], Circuit Judges.

PER CURIAM:

BellSouth Telecommunications, Inc. ("BellSouth") and the Florida Public

Service Commission ("FPSC") appeal from the order of the district court reversing the

FPSC's arbitration decision governing the telecommunications access agreement

between BellSouth and MCI Telecommunications Corporation[1] and MCImetro Access

Transmission Services, Inc.[2] (collectively "MCI"). We affirm.

The 1996 federal Telecommunications Act requires incumbent local telephone

exchange carriers to negotiate "interconnection agreements" with new, competitive

local carriers. See 47 U.S.C. § 251(c)(2). Incumbent local carriers must also allow

new competitors to lease unbundled elements of the incumbent's network and sell

retail services at wholesale to the competitor for resale. See 47 U.S.C. § 251(c)(3),(4).

———————————————

[*]Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]Now MCI WORLDCOM Network Services, Inc.

[2]Now MCImetro Access Transmission Services LLC.

2

Both parties are required to negotiate in good faith to achieve the Act's goal of increasing competition for local telephone service. See 47 U.S.C. § 251(c)(1). In essence, the Act requires incumbents to give competitors access to their telephone networks in exchange for a fair price for that access. See 47 U.S.C. §§ 251(c)(3), 252(d)(1). Negotiation is the preferred method for determining the proper level of access and price, see 47 U.S.C. § 252(a)(1), but if the parties cannot agree on all issues mandated by the Act, a state commission is empowered, though not required, to arbitrate the remaining disputes. See 47 U.S.C. § 252(b)(1). If the state commission chooses not to fill that role, the Federal Communications Commission is required to do so. See 47 U.S.C. § 252(e)(5).

In the present case, MCI and BellSouth could not agree on all terms of an interconnection agreement governing MCI's use of incumbent BellSouth's network. MCI petitioned the FPSC to resolve the remaining issues. The FPSC agreed to arbitrate. Following a hearing, the FPSC ruled in favor of BellSouth on the disputed issues relevant to this appeal.

The FPSC adopted the pricing system advocated by BellSouth. Although the parties agreed that compensation should be based on BellSouth's forward-looking operation costs, they disagreed on the basis for determining those costs. The FPSC adopted BellSouth's cost studies and chose to adopt its Total Service Long-Run

3

Incremental Cost ("TSLRIC") basis, which looked to future costs associated with BellSouth's existing network architecture, rather than MCI's Total Element Long-Run Incremental Cost ("TELRIC") basis, which looked to future costs associated with a hypothetical, efficient network based on BellSouth's existing wire centers.

The FPSC also refused to consider MCI's request for an enforcement and compensation mechanism for the agreement. The commission determined such a provision fell outside the scope of disputes it was entitled to arbitrate.

MCI appealed to the district court under the Act's review provision. See 47 U.S.C. § 252(e)(6). The district court reversed the FPSC's relevant rulings. We affirm the judgment of the district court.

## 1. Jurisdiction

Two questions of jurisdiction must be answered at the outset. We must consider, first, whether the district court's remand order is an appealable order.[3] As a general rule, remand orders from district courts to administrative agencies are not final and appealable. See Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 329-30 (D.C. Cir. 1989). Yet, there is a widely recognized distinction between remands where a district court simply orders the agency to proceed under a "certain legal standard,"

---

[3]On November 13, 2000, by order of this court, this appeal was dismissed for lack of jurisdiction. By order of May 13, 2001, BellSouth's motion for reconsideration was granted, and the jurisdictional issue carried with the case.

4

see id. at 330, and in situations where a district court remands for further consideration of evidence. A remand order generally is found appealable in the former cases because the agency, forced to conform its decision to the district court's mandate, cannot appeal its own subsequent order. See Occidental Petroleum, 873 F.2d at 329-30 (utilizing the "collateral order doctrine"); Huie v. Bowen, 788 F.2d 698, 703 (11th Cir. 1986) (same); see also Forney v. Apfel, 524 U.S. 266, 269-72 (1998); Sullivan v. Finkelstein, 496 U.S. 617, 625-26 (1990). The collateral order doctrine applies here. The district court's order mandated the FPSC to conform its decision to the law as interpreted by the district court. The FPSC will not be able to appeal the order it will issue in compliance with this opinion and the district court's mandate. Consequently, the district court's order was, for all practical purposes, final as to the FPSC. We have jurisdiction to consider this appeal.

We must also consider the FPSC's argument that the Eleventh Amendment prohibits review of the commission's decision in the federal courts. The FPSC addresses its argument to the three possible means by which the bar of state sovereign immunity can be evaded. It argues Congress had no authority under its commerce power to abrogate state sovereign immunity in the Telecommunications Act. See Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). It argues the Florida statute, Fla. Stat. Ann. § 120.80(13)(e), which authorizes the FPSC to hear tele-

5

communications disputes, does not constitute a specific and unequivocal waiver of sovereign immunity. See Fla. Stat. Ann. § 768.28(17); Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Exp. Bd., 527 U.S. 666, 670 (1999). FPSC argues it is an arm of the state legislature, separate and distinct from its individual members, such that the state is "the real party in interest." See Edelman v. Jordan, 415 U.S. 651, 663 (1974). Consequently, it asserts Ex parte Young, 209 U.S. 123 (1908), is inapplicable to allow the suit to proceed against the commissioners in their individual capacities.

The FPSC's arguments are foreclosed by the Supreme Court's recent decision in Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 122 S.Ct. 1753 (2002). There the Court reiterated that, "[i]n determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Id. at 1760 (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). The Court also noted that the Telecommunications Act evidenced no congressional intent to foreclose jurisdiction under Ex Parte Young, see Seminole Tribe, 517 U.S. at 55-57, and that no "monetary loss resulting from a past breach of a legal duty" would be imposed upon the state treasury. See Verizon Maryland, 122 S.Ct at 1760-

6

61 (citing Edelman v. Jordan, 415 U.S. at 668). Thus, the Court held that a prayer for injunctive and declaratory relief–that state public service commission officials be "restrained from enforcing an order in contravention of controlling federal law–clearly satisfies [the Court's] 'straightforward inquiry.'" Id. at 1760. The present case cannot be distinguished from Verizon Maryland; we hold the Eleventh Amendment provided no bar to the district court's adjudication.

*2. "Forward Looking Economic Cost" Basis*

The parties' primary dispute involves the FPSC's determination to apply TSLRIC as the basis for its pricing determination. The district court reversed, finding that 47 C.F.R. § 51.505(b)(1)[4] mandated application of TELRIC as the basis for state commissions' pricing determinations. BellSouth asserts this was error in light of the decision of the Eighth Circuit in Iowa Utils. Bd. v. FCC, 219 F.3d 744, 750-51 (8th Cir. 2000), which held TELRIC violated the Telecommunications Act.

BellSouth's position is untenable. In Verizon Communications, Inc. v. FCC, 122 S.Ct 1646, 1667-79 (2002), the Court reversed Iowa Utilities Board to the extent the Eighth Circuit had invalidated the FCC's pricing rule. The Court found TELRIC a reasonable policy to govern pricing disputes and specifically rejected the Eighth

---

[4]"The [TELRIC] cost of an element should be measured based on the use of the most efficient telecommunications technology currently available and the lowest cost network configuration, given the existing location of the incumbent [local exchange carrier's] wire centers."

Circuit's plain meaning analysis. <u>Verizon Communications</u>, 122 S.Ct. at 1667, 1678. The Court also rejected the incumbent carriers' arguments that TELRIC would fail to induce the competition envisioned by the Telecommunications Act and, in any event, was far too complicated to be of practical value as a pricing mechanism. <u>Id.</u> at 1668-79. Thus, the Court upheld 47 C.F.R. § 51.505(b)(1) as a valid and binding regulation. As such, the district court did not err in relying on that regulation to reverse the FPSC.

*3. Enforcement and Compensation Provision*

The district court also reversed the FPSC's determination that it lacked authority to impose terms including a liquidated damages provision. The court held that statutory authority, under 47 U.S.C. § 252(b)(1), for state public service commissions to arbitrate "any open issue" was very broad. From its reading of the statute, the court implied that state commissions were required to resolve literally any question posed in a petition for arbitration. <u>See</u> Order on Merits (June 6, 2000) at 33 ("The statutory term 'any open issues' makes clear that the right to arbitrate is as broad as the freedom to agree; any issue on which a party unsuccessfully seeks agreement may be submitted to arbitration."). BellSouth appealed.

MCI initially argues this issue is moot. Pursuant to Federal Rule of Appellate Procedure 28(j), MCI informs us that in recent arbitration proceedings, the FPSC has

considered the disputed provisions in accordance with the district court's order. Having done so, MCI asserts there is nothing more for the FPSC to do to comply with the district court's decision on the issue. BellSouth disagrees, asserting it is still injured by the district court's order mandating arbitration and this court can "grant meaningful relief," see SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 77 F.3d 1325, 1332 (11th Cir. 1996), to BellSouth by reversing the district court's order.

MCI asserts the question presented–whether it is within the FPSC's power to arbitrate an enforcement provision–is moot in light of the FPSC's compliance with the district court's order to arbitrate such a provision. We disagree.[5] Were we to reverse the district court and hold that the FPSC lacked authority to arbitrate an enforcement provision, that decision would have the effect of negating the performance assessment plan and accompanying remedies imposed by the FPSC. To that extent, we would be granting meaningful relief to BellSouth,[6] not merely offering an advisory opinion on

---

[5]We state no opinion whatsoever on the substance of the FPSC's recent arbitration action, and we do not consider the result of that action, to the extent we are informed of its outcome, in this appeal.

[6]It must be remembered that BellSouth is a party as well as the FPSC. Indeed, the FPSC's compliance might give the impression that there was no longer a live controversy over its power as far as it was concerned, but see 13A Charles A. Wright, et al. Federal Practice and Procedure § 3533.7, at 355 (2d ed. 1984) ("Temporary compliance with a decree pending appeal . . . clearly should not moot a case."), although that may be a mistaken impression in this case as the FPSC appeared to comply with the district court's order without conceding its argument that it lacked authority. See Final Order Requiring Performance Assessment Plan (September 10, 2001) at 252-53 (noting that the district court "decided that we can arbitrate and adopt" a remedy plan).

9

a hypothetical question concerning the FPSC's power under the Act. The possibility of that outcome is sufficient for a finding that the question is not moot, regardless of our ultimate opinion on the merits.

Although we believe the issue is not moot, we hold the district court did not err by reversing the FPSC's determination of the scope of its authority. BellSouth contends the district court's interpretation violates the Telecommunications Act. It argues that § 251(c)(1) of the Act places on incumbents the obligation "to negotiate in good faith in accordance with section 252 [only] the particular terms and conditions of agreements to fulfill the duties of [§§ 251(b) & (c)]." This means that, while incumbents may choose to negotiate other issues, nothing in the Act requires them to reach peripheral agreements like the enforcement and compensation provisions desired by MCI. Thus, BellSouth argues, § 252(b)(1)'s language "any open issues" can only be read to include those issues which an incumbent is mandated to negotiate, or the limited mandate would be rendered ineffective.

We agree with the district court's resolution, though on grounds different than those adopted by the court. BellSouth is correct that the district court's interpretation of the Act is too broad. If the FPSC must arbitrate *any* issue raised by a moving party,

---

Regardless, however, the controversy is very much alive as between MCI and BellSouth regarding the scope of the FPSC's power, as discussed above.

10

then there is effectively no limit on what subjects the incumbent must negotiate. This is contrary to the scheme and the text of that statute, which lists only a limited number of issues on which incumbents are mandated to negotiate. See 47 U.S.C. §§ 251(b), (c) (setting forth the obligations of all local exchange carriers and incumbent local exchange carriers, respectively).

The provision requested by MCI, however, clearly falls within the FPSC's authority. Under 47 U.S.C. § 252(b)(4)(C), "[t]he State commission shall resolve each issue set forth in the petition and the response, if any, by imposing appropriate conditions as required to implement" the arbitrated agreement. Clearly, enforcement and compensation provisions, including the liquidated damages provision desired by MCI, fall within the realm of "conditions . . . required to implement" the agreement. For example, 47 U.S.C. § 252(c)–to which § 252(b)(4)(C) expressly refers–specifically mandates that the state commission "provide a schedule for implementation of the terms and conditions by the parties to the agreement." 47 U.S.C. § 252(c)(3). A schedule for implementation would be potentially meaningless without some mechanism to enforce it; thus, enforcement mechanisms like those desired by MCI are clearly contemplated by the Act and within the FPSC's authority. The district court was correct that, although the FPSC ultimately does not have to accept MCI's proposal, it does have the authority to impose such conditions and, thus,

erred by not even considering MCI's proposal.  Consequently, the district court did not err by reversing the FPSC's determination.

JUDGMENT AFFIRMED.