**BELLSOUTH TELECOMMUNICATIONS, INC.,**
Plaintiff,

v.

**The GEORGIA PUBLIC SERVICE COMMISSION, et al.,**
Defendants.

**Competitive Carriers of the South, Inc., et al., Plaintiffs,**

v.

**The Georgia Public Service Commission, et al.,**
Defendants.

Nos. 1:06–CV–00162–CC, 1:06–CV–00972–CC.

United States District Court, N.D. Georgia.

Jan. 3, 2008.

Matthew Henry Patton, Michael E. Brooks, Kilpatrick Stockton LLP, E. Earl Edenfield, Jr., Meredith Ellen Mays, Atlanta, GA, Sean A. Lev, Kellogg Huber Hansen Todd Evans & Figel, Washington, DC, for Plaintiff BellSouth Telecommunications, Inc.

Anne Ware Lewis, Strickland Brockington Lewis, Atlanta, GA, William L. Magness, Casey, Gentz & Magness, LLP, Austin, TX, for Plaintiffs.

Daniel S. Walsh, Sidney R. Barrett, Jr., Office of State Attorney General, Atlanta, GA, for Defendants.

## ORDER

CLARENCE COOPER, District Judge.

■ The Court has consolidated these two cases for purposes of hearing and decision because they both turn on a common question of law—namely, whether the Georgia Public Service Commission ("PSC") has authority to implement 47

U.S.C. § 271, a federal statute that imposes conditions on Bell operating companies that the Federal Communications Commission ("FCC") has authorized to provide long-distance services.

Having considered the parties' written submissions and having heard extensive oral argument on November 27, 2007, the Court finds that the PSC lacks authority to set rates for § 271 checklist items. That conclusion resolves the principal issue in the case brought by BellSouth Telecommunications, Inc. ("BellSouth") as well as the sole issue presented by Competitive Carriers of the South, Inc. ("CompSouth"). The Court remands the remaining issues raised by BellSouth to the PSC for reconsideration in light of this Order.

## BACKGROUND

### A. Statutory and Regulatory Framework

*Section 251.* To promote competition for local telecommunications services, Congress enacted the Telecommunications Act of 1996 ("1996 Act").[1] One provision of that Act—47 U.S.C. § 251—obligates incumbent local exchange carriers ("ILECs"), which are companies like BellSouth that have traditionally provided local telephone service in a particular geographic area, to allow competitors, known as competitive local exchange carriers ("CLECs") to lease elements of the ILECs' telephone networks at regulated rates. *See* 47 U.S.C. § 251(c)(3). When § 251 requires an ILEC to provide access to a particular network element at regulated rates, that element is known as an unbundled network element (or "UNE").

To implement the duties of § 251, ILECs and CLECs enter into "intercon-

---

1. Pub. L. No. 104–104, 110 Stat. 56 (1996) (amending the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*).

nection agreements." Those parties are required, in the first instance, to negotiate terms implementing the § 251 duties. *See id.* §§ 251(c)(1), 252(a). As discussed in more detail below, if those negotiations are unsuccessful, state commissions are empowered to resolve "open issues" by applying the requirements of § 251 and the FCC regulations implementing § 251. *See id.* § 252(c), (d). Agreements reached by either negotiation or arbitration must be approved by a state commission. *See id.* § 252(e).

*Facilities at Issue Here.* Under the 1996 Act, the FCC determines which network facilities will be subject to unbundling under § 251 (and thus become UNEs). The FCC may require an ILEC to provide access to (i.e., to "unbundle") an element only if it determines that CLECs would be "impair[ed]" in their ability to provide service if they did not have access to the element as a UNE. *Id.* § 251(d)(2). These cases principally concern three particular network facilities: (i) switches, the computers that route traffic on a telecommunications network; (ii) loops, the copper wires or equivalent facilities that connect customers' premises to the ILEC network; and (iii) transport facilities, cables that connect switches to each other. Also at issue here is a service known as "line sharing," which allows a CLEC to provide high-speed data service over a portion of the frequency on a copper loop, without paying BellSouth to lease the entire loop.

Although the FCC previously required access to these facilities, more recently (after several adverse federal court decisions[2]), the FCC issued the *Order on Remand,*[3] which prohibited the mandatory leasing of switching and (in the circumstances presented here) loops and transport as UNEs. *See* 20 FCC Rcd. at 2537, ¶ 5, 2652–54, ¶¶ 218, 220 (switching); *id.* at 2575–76, ¶ 66, 2614, ¶ 146 (loops and transport). The FCC also held in 2003 that, contrary to the agency's prior judgment, line sharing should not be made available as a UNE under § 251. *See Triennial Review Order,*[4] 18 FCC Rcd. at 17132–33, ¶ 255.

*Section 271.* A separate provision of the 1996 Act, § 271, establishes a process under which so-called Bell operating companies ("BOCs")—companies such as Bell-South that were created by the 1982 federal antitrust decree that broke up the original AT & T—may seek authority to provide long-distance services. A BOC may apply only to the FCC to obtain authority on a state-by-state basis to provide long-distance services. *See* 47 U.S.C. § 271(d)(1). In particular, Congress specified a list of conditions—known as the "competitive checklist"—that the FCC must conclude that a BOC has satisfied in order for that federal agency to authorize the BOC to provide long-distance services. *See id.* § 271(c), (d)(3). Those checklist items include access to "[l]ocal switching," *id.* § 271(c)(2)(B)(vi); "[l]ocal loop transmission," id. § 271(c)(2)(B)(iv); and "[l]ocal transport," *id.* § 271(c)(2)(B)(v)

Congress likewise empowered the FCC to determine whether, after a BOC has

---

2. *See AT & T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999); *USTA v. FCC,* 290 F.3d 415 (D.C.Cir.2002) ("*USTA I*"); *USTA v. FCC,* 359 F.3d 554 (D.C.Cir.2004) ("*USTA II*").

3. Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers,* 20 FCC Rcd. 2533 (2005)

("*Order on Remand*"), aff'd, Covad Communications Co. v. FCC, 450 F.3d 528 (D.C.Cir. 2006).

4. Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers,* 18 FCC Rcd. 16978 (2003) ("*Triennial Review Order*") (subsequent history omitted).

obtained § 271 authority, the company continues to meet the conditions for that approval. *See id.* § 271(d)(6).

## B. Procedural History

In January 2006, the PSC issued the first of the orders at issue in these cases— an order initiating hearings to set rates that BellSouth must charge for access to facilities and services that BellSouth offers to satisfy § 271.[5] The PSC held "that it is reasonable to assert jurisdiction to set just and reasonable rates for de-listed UNEs"—which are network elements to which BellSouth no longer must provide access as UNEs under § 251—*"pursuant to Section 271 of the Federal Telecom Act." Order Initiating Hearings* at 4 (emphasis added).

Having declared its authority to implement § 271, the PSC subsequently issued an order requiring BellSouth to charge particular regulated rates for access to switching, loops, and transport.[6] The PSC later issued a reconsideration order in which it declined to set a rate for switching.[7] Additionally, the PSC issued a separate order addressing a variety of related issues.[8] As relevant here, that order required BellSouth to provide line sharing under § 271. *See Order on Remaining Issues* at 39–40.

In this Court, BellSouth challenges the PSC's assertion of authority to set rates for loop and transport facilities that must be provided only to satisfy § 271, and CompSouth challenges the PSC's decision on reconsideration declining to set a rate for switching. BellSouth also challenges the PSC's authority to mandate line sharing under § 271 and to set a rate for access to that arrangement. Finally, BellSouth challenges several other aspects of the PSC's orders in its amended complaint, but the Court need not specifically address those issues, as explained below.

## DISCUSSION

### I. The PSC Lacks Authority To Implement § 271 or To Set Rates for Facilities and Services Required Under § 271

**A.** The Court holds that the PSC lacks authority to set rates for § 271 checklist items. As the First Circuit has explained in rejecting the same claim of state authority, the PSC's contrary position is "at odds with the statutory language, history and policy of section 271 and most relevant precedent." *Verizon New England, Inc. v. Maine Pub. Utils. Comm'n,* 509 F.3d 1, 7 (1st Cir.), *reh'g denied,* 509 F.3d 13 (1st Cir.2007). Indeed, eight of the nine other federal courts to have addressed this issue have reached that same conclusion.[9] The

5. *See* Order Initiating Hearings To Set a Just and Reasonable Rate Under Section 271, *Generic Proceeding To Examine Issues Related to BellSouth Telecommunications, Inc.'s Obligations To Provide Unbundled Network Elements,* Docket No. 19341–U, at 1, 3–4 (Ga. Pub. Serv. Comm'n Jan. 20, 2006) (*"Order Initiating Hearings"*).

6. *See* Order Setting Rates Under Section 271, *Generic Proceeding To Examine Issues Related to BellSouth Telecommunications, Inc.'s Obligations To Provide Unbundled Network Elements,* Docket No. 19341–U, at 9–10 (Ga. Pub. Serv. Comm'n Mar. 10, 2006).

7. *See* Order on Reconsideration, *Generic Proceeding To Examine Issues Related to BellSouth Telecommunications, Inc.'s Obligations To Provide Unbundled Network Elements,* Docket No. 19341–U (Ga. Pub. Serv. Comm'n Mar. 24, 2006).

8. *See* Order on Remaining Issues, *Generic Proceeding To Examine Issues Related to BellSouth Telecommunications, Inc.'s Obligations To Provide Unbundled Network Elements,* Docket No. 19341–U (Ga. Pub. Serv. Comm'n Mar. 2, 2006) (*"Order on Remaining Issues"*).

9. *See Verizon New England,* 509 F.3d at 7–8; *Michigan Bell Tel. Co. v. Lark,* No. 06–11982,

only court to have gone the other way, a district court in Maine, was subsequently reversed on this point by the First Circuit. *See Verizon New England,* 509 F.3d at 6–10. Moreover, as detailed in BellSouth's submissions to the Court, the overwhelming majority of state commissions have held that they cannot enforce the requirements of § 271.

The text and structure of the statute confirm the correctness of these conclusions. In § 271, Congress created two administrative duties and assigned both solely to the FCC. First, a BOC seeking authority under § 271 to provide long-distance services must "apply to the Commission"—that is, to the FCC—and it is "the Commission" that "shall issue a written determination approving or denying the authorization requested" after "[t]he Commission" determines whether the specified criteria, including the competitive checklist, are satisfied. 47 U.S.C. § 271(d)(1), (3); *see id.* § 271(c)(2)(B). Second, the FCC must address any enforcement issues: "The Commission shall establish procedures for the review of complaints" that a BOC is not complying with § 271; "the Commission shall act on such [a] complaint within 90 days"; and "the Commission may" take action to enforce the requirements of § 271 if "the Commission determines" that a BOC is not in compliance with its obligations under § 271. *Id.* § 271(d)(6).

Congress gave state commissions, by contrast, only an *advisory* role at the application stage of the § 271 process. The FCC is to "consult with the State commission of any State that is the subject of" a § 271 application before the FCC rules on the application. *Id.* § 271(d)(2)(B). The fact that Congress considered the appropriate role for the state commissions and explicitly limited them to this consultative task "works against" the PSC's claim of a power to set rates or otherwise implement § 271. *Verizon New England,* 509 F.3d at 7.

The absence of state commission authority to implement § 271 is confirmed by the text of § 252. Section 252 expressly limits state commissions to arbitrating terms and setting rates for purposes of §§ 251 and 252.

Specifically, § 252 authorizes state commissions to resolve only those "open issues" that remain after the parties negotiate "a request for interconnection, services, or network elements pursuant to *section 251.*" 47 U.S.C. § 252(a)(1), (b)(1) (emphasis added). In resolving those issues, the state commission must "ensure that such resolution ... meet[s] the requirements of *section 251* of this title, including the regulations prescribed by the [FCC] pursuant to *section 251* of this title." *Id.* § 252(c)(1) (emphases added). Furthermore, § 252(c)(2) authorizes state commissions to "establish any rates for interconnection, services, or network ele-

2007 WL 2868633 (E.D.Mich. Sept. 26, 2007), *appeals pending,* Nos. 07–2469, 07–2473 (6th Cir.); *BellSouth Telecomms., Inc. v. Kentucky Pub. Serv. Comm'n,* No. 06–65–KKC, 2007 WL 2736544 (E.D.Ky. Sept. 18, 2007); *Qwest Corp. v. Arizona Corp. Comm'n,* 496 F.Supp.2d 1069, 1077–79 (D.Ariz.2007), *appeals pending,* Nos. 07–17079, 07–17080 (9th Cir.); *Illinois Bell Tel. Co. v. O'Connell–Diaz,* No. 05–C–1149, 2006 WL 2796488, at *13–*14 (N.D. Ill. Sept. 28, 2006); *Dieca Communications, Inc. v. Florida Pub. Serv. Comm'n,* 447 F.Supp.2d 1281, 1285–86 (N.D.Fla.2006); *Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n,* 461 F.Supp.2d 1055, 1066–69 (E.D.Mo.2006), *appeals pending,* Nos. 06–3701, 06–3726, 06–3727 (8th Cir.); *Verizon New England, Inc. v. New Hampshire Pub. Utils. Comm'n,* No. 05–cv–94, 2006 WL 2433249, at *8 (D.N.H. Aug. 22, 2006), *aff'd,* *Verizon New England,* 509 F.3d 1; *BellSouth Telecomms., Inc. v. Mississippi Pub. Serv. Comm'n,* 368 F.Supp.2d 557, 565–66 (S.D.Miss.2005).

ments according to subsection (d) [of § 252]," *id.* § 252(c)(2), but limits them to setting rates only "for purposes of" § 251, *id.* § 252(d)(1), (2), (3); *see id.* § 252(c)(2). In reviewing the resulting interconnection agreement, the state commission may reject arbitrated agreements only "if it finds that the agreement does not meet the requirements of *section 251* ..., including the regulations prescribed by the [FCC] pursuant to section 251 ..., or the standards set forth in subsection (d) of [section 252]." *Id.* § 252(e)(2)(B) (emphasis added). In short, state commission duties are explicitly limited to implementing § 251, and nothing in § 252 authorizes state commissions to impose conditions necessary to meet the requirements of § 271. *See, e.g., Illinois Bell,* 2006 WL 2796488, at *13 ("The structure of the Act strongly suggests Congress's intent to separate Sections 251 and 252 from Section 271, as well as its intent to confine state authority to the former provisions.").

Significantly in this regard, the Eleventh Circuit has held that state commission duties are limited to implementing the requirements of §§ 251 and 252. *See MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.,* 298 F.3d 1269, 1274 (11th Cir.2002) (per curiam). The circuit court explained that, if ILECs were required to negotiate (and, if necessary, arbitrate) items that go beyond those requirements, there would be "effectively no limit on what subjects the incumbent must negotiate," a result "contrary to the scheme and the text of that statute, which lists only a limited number of issues on which incumbents are mandated to negotiate." *Id.* (citing 47 U.S.C. § 251(b), (c)); *see Dieca Communications,* 447 F.Supp.2d at 1286 n. 7 ("[i]n this circuit, a state commission's authority in a § 251 arbitration is only to address issues arising under § 251") (citing *MCI Telecomms.,* 298 F.3d at 1274).

In claiming authority to implement § 271 in its orders, the PSC suggested that § 271(c) implicitly contemplates state commission authority to implement § 271 when arbitrating interconnection agreements. *See, e.g., Order Initiating* Hearings at 3. Section 271(c) states that a BOC applicant for long-distance authority may establish that it makes available each item on the "[c]ompetitive checklist" by pointing to "one or more binding agreements that have been approved under section 252." 47 U.S.C. § 271(c)(1)(A), (c)(2). The PSC argues that, because state commissions "approve[ ]" agreements "under section 252," it necessarily follows that state commissions have the authority to enforce the requirements of § 271 when approving those agreements.

That argument does not establish that the PSC has authority to impose obligations to implement § 271. As the First Circuit explained in rejecting the same argument, "the cross-references in section 271 to sections 251 and 252 ... are hardly a delegation of power to the states to implement section 271," and nothing in those provisions provides state commissions the arbitration or ratemaking authority asserted by the PSC here. *Verizon New England,* 509 F.3d at 6–7; *see also Southwestern Bell Tel.,* 461 F.Supp.2d at 1068 (rejecting the same argument).

**B.** Furthermore, the PSC's orders at issue in these cases cannot be sustained on the basis of state law. Although the PSC's later orders contain brief references to state law, the order asserting jurisdiction to set rates leaves no doubt that the PSC premised its actions on its claim of authority to implement federal law, specifically § 271. *See, e.g., Order Initiating Hearings* at 7 ("**ORDERED FURTHER,** that the Commission hereby asserts its authority under *Section 271 of the Federal Act* to set just and reasonable rates for de-listed

unbundled network elements.") (emphasis added); *see also BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC,* 425 F.3d 964, 970 (11th Cir. 2005) ("An order of an agency can only be defended on the grounds cited by the agency."). Moreover, the later references to state law do not suffice to show that the PSC believed it could set rates for these facilities and services if § 271 did not exist. Put differently, there is no suggestion in these orders that state law would provide an independent basis to mandate access to these facilities wholly independent of § 271.

 In any event, under this federal scheme, the PSC could not rely on state law to justify its decision to set rates for the facilities and services at issue here in light of the federal scheme the 1996 Act created. *See, e.g., Geier v. American Honda Motor Co.,* 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In particular, the PSC's decision to set regulated rates contravenes the FCC's conclusion that rates set through other means can satisfy § 271. As the FCC explained, a BOC could demonstrate its compliance with § 271 by showing that it offers the elements on the competitive checklist at rates that are "at or below the rate at which the BOC offers comparable functions to similarly situated purchasing carriers under its interstate access tariff." *Triennial Review Order,* 18 FCC Rcd. at 17389, ¶ 664. A BOC also could "demonstrate that the rate at which it offers a section 271 network element is reasonable by showing that it has entered into arms-length agreements with other, similarly situated purchasing carriers to provide the element at that rate." *Id.* The FCC's statements make sense because, when a BOC need no longer provide access to a

§ 271 element as a UNE under § 251, CLECs are no longer "impaired" in their ability to compete without forced access to the element at regulated rates. *See, e.g., Order on Remand,* 20 FCC Rcd. at 2644, ¶ 204.

The PSC's decision to require BellSouth to charge regulated rates for access to checklist items cannot be reconciled with the FCC's statements: if BellSouth must charge the rate the PSC set, then it cannot negotiate "arms-length agreements" with CLECs to charge a different rate (or file a tariff with the FCC containing a different rate), and the FCC's statements would be meaningless. *See generally BellSouth Declaratory Ruling,*[10] 20 FCC Rcd. at 6840–44, ¶¶ 21–27 (states cannot impose unbundling requirements, even under § 251, that contravene FCC determinations).

Beyond that, given the federal statutory scheme involved here, there cannot be a patchwork of individual state judgments about whether to set regulated rates for these facilities. Rather, Congress gave the FCC exclusive authority to determine compliance with § 271, and that federal agency has made clear that *it* will review rates, if necessary, for these facilities. *See Triennial Review Order,* 18 FCC Rcd. at 17389, ¶ 664. Indeed, although, as CompSouth emphasized at argument, Congress reserved some state authority to impose unbundling requirements that parallel the obligations of § 251, *see* 47 U.S.C. § 251(d)(3), that provision is expressly limited to implementation of § 251, and § 271 contains no similar savings clause, strongly signaling Congress's expectation that state commissions would not exercise independent state-law authority with respect to § 271 checklist items.

---

**10.** Memorandum Opinion and Order and Notice of Inquiry, *BellSouth Telecommunications, Inc. Request for Declaratory Ruling,* 20 FCC Rcd. 6830 (2005) *("BellSouth Declaratory Ruling").*

**C.** For the reasons set forth above, the PSC's orders are unlawful (i) to the extent that they set rates for loops and transport that must be provided under § 271, and (ii) to the extent that they set rates for access to line sharing under § 271. BellSouth's request for declaratory and injunctive relief from the PSC's decisions to set rates for loops, transport, and line sharing therefore must be granted. As of the date of this Order, BellSouth no longer must provide access to the facilities and services at issue here at the rates the PSC set.

## II. Remaining Issues

In light of the Court's ruling, Comp-South's affirmative claim must be denied. CompSouth asserts that the PSC acted unlawfully in reconsidering its decision to set a rate for switching. Because the PSC lacked authority to set a rate for switching in the first place, the PSC could not have acted unlawfully in vacating the rate that it set.

■ Although the Court finds that the PSC acted unlawfully in the orders under review, the Court concludes that BellSouth should not be awarded damages in this case. The Court denies BellSouth's request to be made whole for the difference between the § 271 rates the PSC set and the rates that BellSouth would have charged in the absence of the PSC's orders. As stated by the PSC at argument, this case involves the agency's authority to set rates, not whether a particular rate is just and reasonable. Thus, although no party may require BellSouth to provide service at the PSC-established rates from the date of this Order, the Court does not require the PSC to reset the rates it authorized BellSouth to charge prior to the date of this Order. From the date of the PSC's orders through the date of this Order, BellSouth is entitled to recover the rates set by the PSC.

Finally, with respect to the other issues raised in BellSouth's amended complaint and not addressed in this Order, the Court remands those issues to the PSC for further consideration in light of the Court's Order. Those issues may involve § 271 in a variety of ways, and the Court decides that it would be prudent to allow the PSC to reconsider them in light of this Order.

\* \* \*

It is hereby ORDERED AND ADJUDGED that BellSouth's request for declaratory and injunctive relief is GRANTED. The Court hereby declares unlawful, and enjoins the Georgia Public Service Commission and the other defendants from seeking to enforce, the PSC's orders to the extent those orders require Bell-South (i) to offer access to loops and transport that BellSouth is not obligated to make available pursuant to § 251 at the rates set by the PSC and/or (ii) to offer and set rates for line sharing. No party may require BellSouth to provide service at those rates as of the date of this Order. For the period of time prior to the date of this Order, the Court does not alter in any way the rates the PSC authorized Bell-South to charge. CompSouth's request for declaratory and injunctive relief is DENIED, As to the remaining issues raised in BellSouth's amended complaint, the pertinent portions of the PSC's orders are REMANDED to the PSC for further consideration in light of the Court's Order.