[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2009
THOMAS K. KAHN
CLERK

No. 08-13110

_____

D. C. Docket No. 07-20398-CV-MGC

WORLD FUEL CORPORATION,

Plaintiff-Appellee,

versus

TIM GEITHNER,
Secretary of the Treasury,
U.S. DEPARTMENT OF THE TREASURY,
ADAM SZUBIN,
Director, Program Policy & Implementation,
Office of Foreign Assets Control,
OFFICE OF FOREIGN ASSETS CONTROL,
United States Department of the Treasury,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 28, 2009)

Before BARKETT and FAY, Circuit Judges, and TRAGER,[*] District Judge.

FAY, Circuit Judge:

At issue in this appeal is whether the Office of Foreign Assets Control, United States Department of the Treasury ("OFAC") properly denied World Fuel Corporation ("WFC") a license to access the blocked assets of one of WFC's debtors. The district court remanded the matter to the OFAC for de novo consideration. We dismiss for lack of jurisdiction.

I.    FACTS

In 2004 WFC sold nearly 200,000 gallons of aviation fuel to Aero Continente, S.A., a Peruvian air carrier. When Aero Continente failed to pay for the fuel, WFC brought suit in Florida state court. On May 24, 2004 WFC won a prejudgment writ of garnishment against Aero Continente in the amount of approximately $299,000. On December 7, 2004 WFC won a final judgment on the writ of garnishment in the amount of $142,854. However, WFC was unable to collect because Aero Continente's assets had been blocked by the OFAC[1] as of

_____

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

[1] The OFAC administers U.S. economic sanctions programs. It derives its authority from a number of statutes, such as the Foreign Narcotics Kingpin Designation Act at 21 U.S.C. §§ 1901-1908 ("Kingpin Act"), the International Emergency Economic Powers Act at 50 U.S.C. §§ 1701-1707 ("IEEPA"), and the Trading With the Enemy Act at 50 App. U.S.C. §§ 1-44 ("TWEA").

2

June 1, 2004. The OFAC blocked Aero Continente's assets under the authority of the Kingpin Act[2] and the Foreign Narcotics Kingpin Sanctions Regulations ("Kingpin Regulations") at 31 C.F.R. §§ 598.101 - 598.901.

Under the Kingpin Act and Regulations, the OFAC has authority to grant licenses to access blocked assets. WFC made multiple requests for such a license, but the OFAC denied every one. The OFAC gave two reasons for denying WFC a license: that doing so would diminish the U.S. President's leverage in addressing the problem of international narcotics trafficking, and would prejudice any potential future action to resolve the claims of all Aero Continente's creditors.

## II. PROCEDURE

WFC disputed the denial of its license application and brought suit in the U.S. District Court for the Southern District of Florida. The district court issued an Order Remanding the Matter to the Office of Foreign Assets Control for Additional Investigation and Explanation ("Remand Order"). In its Remand Order, the district court first noted that:

> Under the APA, a court shall "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is considered arbitrary or capricious if the agency has

---

[2] Aero Continente was designated as a Significant Foreign Narcotic Trafficker ("SFNT") under the Kingpin Act. WFC did not challenge the designation of Aero Continente as a SFNT under the Act, or the propriety of blocking Aero Continente's assets.

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Remand O. at 4-5 (quoting Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007)).

After reviewing the OFAC's reasons for denying WFC a license, the court held that the OFAC acted arbitrarily and capriciously. The major problem with the OFAC's approach was that in evaluating WFC's application to access funds blocked under the Kingpin Act, it used the same factors as if the funds been blocked under the International Emergency Economic Powers Act ("IEEPA").

Specifically, the court found that the OFAC should not have considered "presidential leverage" in evaluating WFC's license application. The OFAC argued that this was a valid consideration, invoking Dames & Moore v. Regan, 453 U.S. 654 (1981). In that case the OFAC blocked assets owned by the government of Iran in response to the Iranian hostage crisis, under the authority of the IEEPA. Id. The Supreme Court stated that blocking orders "permit the President to maintain the foreign assets at his disposal for use in negotiating the resolution of a declared national emergency. The frozen assets serve as a 'bargaining chip' to be used by the President when dealing with a hostile country." Id. at 673.

4

The district court declined to apply this logic to blocking actions initiated under the Kingpin Act. The court did not find support in the Kingpin Act, the Regulations, or the Act's legislative history for such a consideration. Further, the court noted that the blocking action at issue in <u>Dames & Moore</u> was initiated under authority of the IEEPA, which was directed at foreign governments. Thus, it was logical for the OFAC to consider the President's leverage when evaluating a license application in that context. In contrast, the court found that the Kingpin Act was directed at "narco-traffickers and their organizations" and that its goal, as expressed in a House Conference Report, was to "assist U.S. Government efforts to identify the assets, financial networks, and business associates of major narcotics trafficking groups." H.R. REP. NO. 106-457, at 42 (1999) (Conf. Rep.), <u>as reprinted in</u> 1999 U.S.C.C.A.N. 304, 313.[3]

The district court also held that the OFAC should not have considered the protection of future creditors in evaluating WFC's application. This was because the court found nothing in the Kingpin Act, the Regulations, or the House Conference Report to support such a consideration, nor was it logically connected

---

[3] The Report further stated: "If effectively implemented, this strategy will disrupt these criminal organizations and bankrupt their leadership," and that the Act "will properly focus our Government's efforts against the specific individuals most responsible for trafficking in illegal narcotics by attacking their sources of income and undermining their efforts to launder the profits generated by drug-trafficking into legitimate business activities." H.R. REP. NO. 106-457, at 42.

to the purpose of the Act. Thus, it was arbitrary and capricious for the OFAC to deny WFC's license application based on this factor.

Further, the court held that the OFAC should have considered whether the WFC was an "innocent" party - in other words, whether it was involved in narcotics trafficking itself. The court drew from this passage in the House Conference Report: "There is no intention that this legislation affect Americans who are not knowingly and willfully engaged in international narcotics trafficking." Id. The court noted that no such statements accompanied the IEEPA or the Trading With the Enemy Act ("TWEA").

After explaining that the OFAC cannot use the same factors to evaluate license applications regardless of whether the funds were blocked under the Kingpin Act or the IEEPA, the court ordered the OFAC to take a fresh look at WFC's license application, this time considering the language, purpose, and legislative history of the Kingpin Act as distinguished from the IEEPA. The court remanded the case to the OFAC for further investigation in accordance with its opinion, and the OFAC has appealed that Order to us.

## III. JURISDICTION

Before we can review the Remand Order, we must determine whether we

have jurisdiction to do so.[4] "Under 28 U.S.C. § 1291 (1994), our jurisdiction is limited to final decisions of the district courts." In re Grand Jury Proceedings, 142 F.3d 1416, 1420 n.9 (11th Cir. 1998). "A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute its judgment.'" Crawford & Co. v. Apfel, 235 F.3d 1298, 1302 (11th Cir. 2000) (quoting Huie v. Bowen, 788 F.2d 698, 701 (11th Cir. 1986)). "As a general rule, remand orders from district courts to administrative agencies are not final and appealable." MCI Telecomm. Corp. v. BellSouth Telecomm. Inc., 298 F.3d 1269, 1271 (11th Cir. 2002). There is an important distinction, however, between situations where a district court orders the agency to "proceed under a certain legal standard," and situations where a district court remands for further consideration of evidence. Id. "A remand order generally is found appealable in the former cases because the agency, forced to conform its decision to the district court's mandate, cannot appeal its own subsequent order." Id.

The OFAC analogizes to the MCI case, and claims that we have jurisdiction to review the Remand Order because the court essentially "held that OFAC had applied an incorrect legal standard and remanded to OFAC for application of what

---

[4] We requested briefing as to "[w]hether the district court's March 31, 2008, order granting the motion to remand to the [OFAC] is immediately appealable?" Thereafter, we carried the jurisdictional question with the case.

7

the district court viewed as the correct legal standard." Initial Br. at 3. We do not agree.

In MCI we held that a remand order to an administrative agency was appealable because the order "mandated" the agency "to conform its decision to law as interpreted by the district court." 298 F.3d at 1271. In that case the district court made two appealable rulings: first, it ordered the agency to use a different pricing standard than it originally used, and second, it reversed the agency's determination that it lacked the authority to impose enforcement mechanisms. Id. at 1272-73.

We do not agree that the MCI case is analogous to this one. We recognize that one could argue, based on the court's language directing the OFAC to reconsider WFC's application using specific factors and not others, that the court did mandate a "certain legal standard." However, we do not view the court's Remand Order that way. We make a distinction between a court telling an agency that it used the wrong standard and requiring that the agency use a different one, as in MCI, and a court telling an agency that it must *develop* a new legal standard appropriate for the statute at issue, as in this case.

Indeed, in our view, the district court here determined that the OFAC *did not yet have* a legal standard appropriate for the Kingpin Act, because it used a

8

standard derived from the IEEPA - a statute with an entirely distinct target, purpose, and legislative history from the Kingpin Act. The court held that the OFAC acted arbitrarily and capriciously because in using an inappropriate legal standard, it considered factors totally unrelated to the Kingpin Act. The court rejected the OFAC's approach and explained how the agency must develop one consistent with the Kingpin Act, as opposed to the IEEPA. To do so, the court had to resort to the Kingpin Act's legislative history. This is because while the Kingpin Act and Regulations spell out a number of things in detail, such as reporting requirements and prohibited transactions, neither the Act nor the Regulations give any specifics as to what *criteria* the OFAC is to use when evaluating a license application. Thus, in the absence of statutory or regulatory guidance, the court looked to a House Conference Report.[5] We take no issue with this approach - after all, it is well-established that "[i]n the absence of any plain meaning of the statutory language, [a court looks] to the legislative history of the statute to determine whether Congress provided any guidance concerning its intent." U.S. v. Fields, 500 F.3d 1327, 1330 (11th Cir. 2007).

More broadly, we agree with the district court that there is nothing about the

---

[5] While that Report did not constitute actual law passed by Congress, it is clear from the Report's language and procedural history that it represented the thoughts of *both* chambers. Thus, it was a valuable source for information on a topic largely unaddressed in either the Act or the Regulations.

Kingpin Act, its language, its purpose or its legislative history that would support the reasons given by the OFAC to justify its action. Nowhere do we find any indication that the Kingpin Act is designed to give the President "bargaining chips" with narcotics traffickers.[6] Neither is there any suggestion that the Kingpin Act was intended to somehow supplement our bankruptcy laws.

In sum, as we read the Remand Order, the district court directed the OFAC to take an entirely fresh look at WFC's license application and to consider that Aero Continente's assets were blocked under the Kingpin Act, not the IEEPA. Thus, rather than mandating a "certain legal standard" to the OFAC, the court directed the agency to develop a new legal standard tailored to the Kingpin Act and its target, purpose, and legislative history. As such, we conclude that the Remand Order does not fall within the exception articulated in MCI, and we do not have jurisdiction to review it.

**DISMISSED FOR LACK OF JURISDICTION.**

---

[6] Procedures exist in other statutes for the government to seize and secure assets derived through illegal narcotics activity.